UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MELISSA L.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. C20-5744-MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits and Supplemental Security Income. Plaintiff contends the administrative law judge ("ALJ") erred by improperly evaluating medical evidence and by discounting her testimony. (Dkt. # 19.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II. BACKGROUND

Plaintiff was born in 1984 and previously worked as an assembly worker, auto rental clerk, baggage handler, food server, pizza maker, and bank teller. AR at 21-22. Plaintiff applied for benefits in October 2017, alleging disability as of September 15, 2017. *Id.* at 11. Plaintiff's application was denied initially and on reconsideration. The ALJ held a hearing in April 2019,

taking testimony from Plaintiff and a vocational expert. *See id.* at 36-55. In June 2019, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 8-23. In relevant part, the ALJ found Plaintiff's severe impairments of bipolar II disorder, posttraumatic stress disorder (PTSD), and attention deficit hyperactivity disorder (ADHD) limited her to a full range of work at all exertional levels subject to a series of non-exertional limitations. *Id.* at 14, 16. Based on vocational expert testimony, the ALJ found Plaintiff could perform jobs found in significant numbers in the national economy. *Id.* at 22-23. Plaintiff appealed this final decision of the Commissioner to this Court. (Dkt. # 4.)

## III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v.*

*Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Erred in Evaluating the Medical Evidence

Plaintiff filed her disability claim on October 10, 2017. The regulations effective March 27, 2017, 20 C.F.R. §§ 404.1520c(c), 416.920c(c), require the ALJ to articulate how persuasive the ALJ finds medical opinions and to explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b). The regulations require an ALJ to specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion. Thus, the ALJ is required to provide specific and legitimate reasons to reject a doctor's opinions. *See, e.g.*, *Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-461 RSM, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020) (finding that the new regulations do not clearly supersede the "specific and legitimate" standard because the "specific and legitimate" standard refers not to how an *ALJ* should weigh or evaluate opinions, but rather the standard by which the *Court* evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence).

Further, the Court must continue to consider whether the ALJ's analysis is supported by substantial evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5852 (January 18, 2017) ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision … [T]hese courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential standard to us."). With

these regulations and considerations in mind, the Court proceeds to its analysis of the medical evidence in this case.

*1. Judy Marsh, LMFT*

Ms. Marsh treated Plaintiff for twelve therapy sessions between September 2017 and January 2018. AR at 362. The ALJ found Ms. Marsh opined "in essence … it appears that the claimant would be unable to sustain competitive employment over the long-term due to issues with concentrating, persisting, or maintaining pace, and due to issues with adapting and managing everyday job demands." *Id*. at 19. The ALJ found Ms. Marsh's opinion "unpersuasive." *Id*.

The ALJ first rejected Ms. Marsh's opinion based upon "the totality of the evidence in the record," specifically, the "trend that when [Plaintiff] was medication-compliant and attended her therapy sessions, she was highly functional for sustained periods of time." AR at 19. In support, the ALJ cites to one February 2019 outpatient treatment note indicating "Vyvanse was working well for her," and "her appetite was normal, her mood was stable, her anxiety had been well managed, and she denied medication side effects." *Id*. Substantial evidence does not support this ground, and the ALJ's finding is legally erroneous under Ninth Circuit precedent. *See Attmore v. Colvin*, 827 F.3d 872, 878 (9th Cir. 2016) ("It is the nature of bipolar disorder that symptoms wax and wane over time."); *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working. Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms. They must also be interpreted with an awareness that improved functioning while being treated and

while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace.") (cleaned up); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). Of note, on March 21, 2019 – one month after the treatment note on which the ALJ relied – Plaintiff reported having "a depressive episode last week that seemed to be brought on by 'PTSD triggers.' She reports low mood, not wanting to do things she enjoyed, anxiety, and poor sleep." AR at 411. Plaintiff also questioned the correctness of the Vyvanse dosage, stating she feels "jumping around a lot in my mind." *Id.* Similarly, on December 7, 2018, Plaintiff reported: "I have been struggling with depression recently. I will lay in bed for 14 hours a day. I am not doing anything I love. I have no energy …. I will talk fast and think that I'm making sense but other people can't understand what I'm saying." AR at 464. Plaintiff's therapist indicated after that session Plaintiff "is in need of intervention to prevent deterioration and facilitate improved levels of functioning[.]" *Id.* Consistent with the "nature of bipolar disorder," *Attmore*, 827 F.3d at 878, Plaintiff's symptoms indeed waxed and waned. Rather than undermining Ms. Marsh's opinion, the treatment note on which the ALJ relies in fact supports the cyclical nature of Plaintiff's mental impairments and attendant symptoms. The ALJ accordingly erred by rejecting the opinion on this ground.

The ALJ also discounted Ms. Marsh's opinion on the ground it was "rendered … over two years ago, which does not provide much probative evidence of [Plaintiff's] current functional abilities." AR at 19. As discussed above, however, Plaintiff's mental impairments continued to affect her through 2019, in a manner consistent with Ms. Marsh's assessment. The ALJ accordingly erred by rejecting the opinion on this ground.

*2. Staci Jenkins, LMHC*

Ms. Jenkins began treating Plaintiff on September 13, 2018, and opined on April 9, 2019 Plaintiff's "inability to focus/concentrate, distractibility, irritability, inability to prioritize, anxiety [and] panic, avoidant behavior, impaired social functioning, insomnia, lack of motivation, and psychosis" would cause Plaintiff to "miss 16 hours or more from even a simple sedentary job[.]" AR at 494. She further opined because Plaintiff "is experiencing severe symptoms which would likely interfere with functioning in all contexts," Plaintiff's attention and concentration would be impaired "100%" of a standard workweek. *Id.* Finally, Ms. Jenkins assessed extreme limitations in Plaintiff's ability to concentrate, interact with others, and understand, remember, and apply information, and a marked limitation in her ability to adapt or mange herself. *Id*. at 495. The ALJ found the opinion "unpersuasive." AR at 21.

The ALJ rejected the opinion for the same reason she rejected the opinion of Ms. Marsh – that is, it is inconsistent with the record's "trend that when [Plaintiff] was medication-compliant and attended her therapy sessions, she was highly functional for sustained periods of time." AR at 21. Because the ALJ erred in rejecting Ms. Marsh's opinion on that ground, as discussed above, she necessarily erred in rejecting Ms. Jenkins' opinion.

*3. David Morgan, Ph.D.*

Dr. Morgan examined Plaintiff in May 2018 and opined Plaintiff's ability to perform activities within a schedule, maintain regular attendance, be punctual within the customary tolerances without special supervision, adapt to changes in a routine work setting, be aware of normal hazards and take appropriate precautions, ask simple questions or request assistance, maintain appropriate behavior in a work setting, complete a normal work day and work week without interruptions from psychologically based symptoms, and set realistic goals and plan independently was markedly impaired, and ability to learn new tasks, perform new routines

without special supervision, make simple work-related decisions, and communicate and perform effectively in a work setting was moderately impaired. AR at 377-78. The ALJ found Dr. Morgan's opinion "unpersuasive." *Id*. at 20.

The ALJ rejected the opinion for the same reason she rejected the opinions of Ms. Marsh and Ms. Jenkins – that is, it is inconsistent with the record's "trend that when [Plaintiff] was medication-compliant and attended her therapy sessions, she was highly functional for sustained periods of time." AR at 20. Because the ALJ erred in rejecting the opinions of Ms. Marsh and Ms. Jenkins opinion on that ground, as discussed above, she necessarily erred in rejecting Dr. Morgan's opinion.

*4. W. Fo, Ph.D. and Bruce Eather, Ph.D.*

Drs. Fo and Eather opined, among other things, Plaintiff is "[a]ble to adapt to the usual demands of low-stress work." AR at 65, 91. The ALJ found the opinions "persuasive." *Id*. at 19. Plaintiff contends the ALJ erred by "formul[ating] an RFC that omitted a restriction to low stress work[.]" (Dkt. # 19 at 10.) The "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most.*" SSR 96-8p, 1996 WL 374184, at *1 (Jul. 2, 1996). As worded, the doctors' opinion does not prescribe "low-stress work" as "the *most*" Plaintiff can do. Plaintiff has accordingly failed to demonstrate the opinion is inconsistent with the RFC.

**B. The ALJ Erred by Discounting Plaintiff's Testimony**

The ALJ found Plaintiff presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged and made no finding she was malingering. The ALJ was thus required to provide "specific, clear, and convincing" reasons supported by substantial evidence to discount Plaintiff's testimony. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

The ALJ indicated "the gravamen of the claimant's allegations is that due to bipolar disorder and PTSD, she is unable to engage in remunerative activity and cannot complete many activities of daily living." AR at 17. The ALJ discounted Plaintiff's testimony as inconsistent with the medical record. *Id.* However, because the ALJ erred in assessing critical medical evidence, as discussed above, this is not a valid ground to discount Plaintiff's testimony. The ALJ accordingly erred by discounting Plaintiff's testimony.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED,** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reevaluate the opinions of Ms. Marsh, Ms. Jenkins, and Dr. Morgan, reassess Plaintiff's testimony, develop the record and redetermine the RFC as needed, and proceed to the remaining steps as appropriate.

Dated this 10th day of June, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge